UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SMA IRREVOCABLE TRUST,        )
DATED 14 MARCH 2011;          )
AARON B. GREENSPAN; and       )
ANTHONY F. SANSONE, JR.,      )
                              )
        Plaintiffs,           )
                              )
    vs.                       )        Case No. 4:11CV00697 ERW
                              )
R. CAPITAL ADVISORS, LLC,     )
GARY R. VIBBARD, and          )
TIMOTHY M. O'LEARY,           )
                              )
        Defendants.           )

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Timothy O'Leary's Motion to Dismiss

Pursuant to Rule 12(b)(6) and/or 12(b)(7) for Failure to Join Indispensable Parties and Failure to

State a Claim [ECF No. 60], Defendant O'Leary's Motion to Strike and for Dismissal [ECF No.

70], and Plaintiff Sansone's and Plaintiff Greenspan's (collectively referred to as the "Greenspan

Plaintiffs") Joint Motion for Leave to File First Amended Joint Complaint [ECF No. 73] .

The instant consolidated case is composed of two separately filed actions, identical in all

material aspects, concerning investments made with R. Capital Advisors, LLC ("RCA"), and

alleging violations of federal and state securities laws.  Plaintiff SMA Irrevocable Trust filed its

Complaint on April 20, 2011, and the Greenspan Plaintiffs filed their Complaint on or about

November 8, 2011.[1]  Before consolidation, Defendant O'Leary filed a Motion to Dismiss the

Complaint filed by Plaintiff SMA Irrevocable Trust [ECF No. 26], and the Greenspan Plaintiffs

---

[1]Greenspan Plaintiffs' Motion for Leave to File First Amended Complaint stated that the
Complaint was filed on November 10, 2011 [ECF No. 44].  However, the First Amended Joint
Complaint indicates the date of filing was November 8, 2011 [ECF No. 73-1].

filed a Motion for Leave to File a First Amended Complaint [ECF No. 44]. Because consideration of the two matters would likely cause the two actions to diverge, causing unnecessary confusion and delay, this Court ordered Plaintiffs SMA Irrevocable Trust, Aaron B. Greenspan, and Anthony F. Sansone, Jr., to jointly file a single, unified Complaint, and consequently, denied the two pending motions as moot [ECF No. 47].

Plaintiffs filed their Joint Complaint on April 6, 2012, naming RCA, Timothy M. O'Leary, and Gary R. Vibbard as defendants [ECF No. 50]. The Joint Complaint contained the following twenty-four counts: 1) Request for Rescission for Failure to Register Under 15 U.S.C. Section 77(k) Against Defendants; 2) Request for Damages for Failure to Register Under 15 U.S.C. Section 77(k) Against All Defendants; 3) Request for Rescission for the Sale of Unregistered Securities Under 15 U.S.C. Section 77(e) as to All Defendants; 4) Request for Damages for the Sale of Unregistered Securities Under 15 U.S.C. 77(e) as to All Defendants; 5) Request for Rescission for Distributing False and Misleading Statements in Private Placement Memorandum Under 15 U.S.C. Section 77(l) as to All Defendants; 6) Request for Damages for Distributing False and Misleading Statements in Private Placement Memorandum Under 15 U.S.C. Section 77(l) as to All Defendants; 7) Request for Rescission for the Fraudulent Sale of Unregistered Securities in Interstate Commerce Under 15 U.S.C. Section 77(g) as to All Defendants; 8) Request for Damages for the Fraudulent Sale of Unregistered Securities in Interstate Commerce Under 15 U.S.C. Section 77(q) as to All Defendants; 9) Request for Rescission for the Failure to Disclose Required Information Under 15 U.S.C. Section 77(j) as to All Defendants; 10) Request for Damages for the Failure to Disclose Required Information Under 15 U.S.C. Section 77(j) as to All Defendants; 11) Request for Rescission for the Use of Unaudited Financial Information as Required Under 15 U.S.C. Section 77(j) and Section 77(I);

12) Request for Damages for the Use of Unaudited Financial Information as Required Under 15 U.S.C. Section 77(j) and Section 77(i) Against All Defendants;  13) Request for Rescission for the Sale of Non-Exempt Securities under Missouri Revised Statute Section 409-002.202 Against All Defendants;  14) Request for Damages Against All Defendants for the Sale of Non-Exempt Securities Under Missouri Revised Statute Section 409-002.202 Against All Defendants (sic); 15) Request for Rescission for Failure to Disclose Information Required by Missouri Revised Statute Section [409.516] as to All Defendants;  16) Request for Damages for Failure to Disclose Information Required by Missouri Revised Statute Section 409.516 as to All Defendants;  17) Request for Damages for Failure to Disclose Information Required by Missouri Revised Statute Section 409.516 Against All Defendants;  18) Request for Damages for Misrepresentation in the Sale of Securities Under Missouri Revised Statute Section 409-005.509(b) Against All Defendants;  19) Request for Rescission for the Making of Untrue Statements in the Sale of Securities Under Missouri Revised Statute Section 409.005.509(b) Against All Defendants;  20) Request for Damages for Making Untrue Statements in the Sale of Securities Under Missouri Revised Statute Section 409-005.509(b) as to All Defendants;  21) Request for Rescission Due to the Use of Fraudulent and Deceptive Practices in the Sale of Securities Under Missouri Revised Statute Section 409-005.509(d);  22) Request for Damages Due to the Use of Fraudulent and Deceptive Practices in the Sale of Securities Under Missouri Revised Statute Section 409-005.509(d) as to All Defendants;  23) Request for Rescission Due to the Liability of All "Sellers" in Connection with the Violations of the Missouri Securities Act Under Missouri Revised Statute Section 409-005.509(d) as to All Defendants; and  24) Request for Damages Due to the Liability of All "Sellers" in Connection with the Violations of the Missouri Securities Act Under Missouri Revised Statute Section 409-005.509(d).

On May 31, 2012, Defendant O'Leary filed his Motion to Dismiss Pursuant to Rule 12(b)(6) and/or 12(b)(7) for Failure to Join Indispensible Parties and Failure to State a Claim [ECF No. 60]. After Plaintiffs failed to file a timely Response to Defendant O'Leary's Motion to Dismiss, this Court ordered Plaintiffs to show cause, no later than July 9, 2012, why the Motion should not be granted [ECF No. 63]. As more fully discussed below, only Greenspan Plaintiffs complied with the Order to Show Cause, and the Court granted their request for leave to file a Response out of time [ECF No. 64, 66]. Plaintiff SMA filed a "Memorandum to File" on July 10, stating that it "join[ed] in the response of [Greenspan Plaintiffs] to the Order to Show Cause and to the Defendant Timothy O'Leary's Motion to Dismiss" [ECF No. 68]. Defendant O'Leary filed a Motion to Strike Response and For Dismissal of First Amended Complaint, directed against Plaintiff SMA on July 11, 2012 [ECF No. 70].

Thereafter, Greenspan Plaintiffs filed their Joint Motion for Leave to File First Amended Joint Complaint on July 16, 2012 [ECF No. 73]. On July 25, Defendant O'Leary filed a Memorandum in Opposition to the Greenspan Plaintiffs' Motion to for Leave to File First Amended Joint Complaint [ECF No. 75].

## I. LEGAL STANDARD

A party may move under Rule 12(b)(6) to dismiss a complaint for "fail[ing] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss is to test "the sufficiency of a complaint[.]" *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).

A claim has facial plausibility sufficient to survive a motion to dismiss "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The two-step inquiry for resolving such motions suggested in *Iqbal* begins with a court determination as to which of the complaint's allegations contain factual matter that can be accepted as true, and which allegations may be disregarded as conclusory statements, legal conclusions, or threadbare recitals of the action's elements. *Id.* at 678-79.  After this initial evaluation establishes the existence of well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.  Materials attached to the complaint as exhibits may be considered when construing the complaint's sufficiency.  Fed. R. Civ. P. 10(c); *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002).

## II.  DEFENDANT O'LEARY'S MOTION TO STRIKE AND FOR DISMISSAL [ECF No. 70]

Upon review of the record, the Court notes that, on November 18, 2011, it granted Plaintiff SMA an extension of time to serve all remaining defendants, ordering it to effect service no later than January 13, 2012 [ECF No. 23].  Although never served, Defendant Gary R. Vibbard responded to the Complaint on behalf of himself and purportedly on behalf of Defendant RCA on January 12, stating that neither he nor the company had been served, and supplying a correct address[2] for both himself and RCA [ECF No. 33].  However, despite having this actual knowledge of the correct address for service for Gary R. Vibbard and RCA, no plaintiff has since attempted to serve either of these defendants.

---

[2]The Court notes that Defendant Vibbard also provided a telephone number and an e-mail address to be used to make arrangements for him to be served [ECF No. 33 at 8].

On January 31, 2012, this Court noted that the file contained no proof of service upon three other defendants, and ordered SMA to show cause, no later than February 10, 2012, why the action should not be dismissed as to those defendants, for lack of timely service [ECF No. 36]. On February 10, SMA stated that it consented to the dismissal of the three other defendants without prejudice because it had been unable to find correct addresses for service [ECF No. 40]. Accordingly, this Court entered an Order on February 13, 2012, dismissing those three defendants without prejudice, for lack of timely service [ECF No. 41].

The Court further notes that, on January 31, 2012, this Court also entered a Order finding that Plaintiff SMA had failed to file a Response to Defendant O'Leary"s Motion to Consolidate, and ordered SMA to show cause no later than February 10, 2012, why the Motion should not be granted [ECF No. 37]. Subsequently, SMA filed a response on February 10, consenting to Motion to Consolidate [ECF Nos. 39, 40]. After considering the responses of SMA and the Greenspan defendants, this Court granted Defendant O'Leary's Motion to Consolidate on February 16, 2012 [ECF No. 42].

Thereafter, on February 23, 2012, this Court ordered SMA and the Greenspan Plaintiffs to file a single, unified Complaint no later than March 15; but subsequently, this Court granted the plaintiffs' request for an extension of time, ordering that the joint complaint be filed no later than April 6, 2012 [ECF Nos. 47, 49]. On that date, the Plaintiffs filed the Joint Complaint that is the subject of Defendant O'Leary's present Motion to Dismiss, which he filed on May 31, 2012 [ECF Nos. 50, 60].

On June 29, 2012, this Court found that Plaintiffs had failed to file a Response to Defendant O'Leary's pending Motion to Dismiss, and again ordered Plaintiffs to show cause, no later than July 9, 2012, why the Motion should not be granted [ECF No. 63]. In their Response

to the Court's Order to Show Cause, Greenspan Plaintiffs alleged that their failure to file a timely Response to the Motion to Dismiss was due to a clerical error in their office [ECF No. 64]. After reviewing the Greenspan Plaintiffs' Response to the Order to Show Cause, which was filed on July 9, the Court accepted their Response to Defendant Timothy O'Leary's Motion to Dismiss [ECF No. 66].

Plaintiff SMA did not respond to the Order to Show Cause by July 9. On July 10, 2012, Plaintiff SMA filed a "Memorandum to File," stating only that it "join[ed] in the response of Plaintiffs Aaron B. Greenspan and Anthony F. Sansone, Jr. to the Order to Show Cause and to the Defendant Timothy O'Leary's Motion to Dismiss" [ECF No. 68].

On July 11, Defendant O'Leary filed his Motion to Strike and For Dismissal, asking the Court to dismiss with prejudice Plaintiff SMA's claims against him due to SMA's failure to comply with the Court's June 29 Order to Show Cause [ECF No. 70]. Defendant O'Leary asserts that Plaintiff SMA's adoption of the Greenspan Plaintiffs' Response does not show cause for SMA's inaction, because Plaintiff SMA is not represented by the counsel for the Greenspan Plaintiffs, and therefore an internal docketing error within the office of Greenspan Plaintiffs' counsel would not be a valid explanation for SMA's failure to file a timely Response to the Motion to Dismiss. This Court agrees.

On July 15, Plaintiff SMA filed a Response to Defendant Timothy O'Leary's Motion to Strike and for Dismissal, asserting only that its adoption of the Greenspan Plaintiffs' Response to the Motion to Dismiss "is completely reasonable" because "each Plaintiff stands in the same position to recover against the Defendants and their cause of actions arise out of the same facts and occurrence[,]" and that "Defendant Timothy O'Leary has not been prejudiced by the fact that

the Response to his Motion to Dismiss and the Order to Show Cause was filed one day late"
[ECF No. 71].

Plaintiff SMA failed to file a response to Defendant O'Leary's Motion to Dismiss. On
June 29, 2012, this Court ordered Plaintiffs to show cause why the Motion to Dismiss should not
be granted. That response period ended on July 9, 2012. Plaintiff SMA has failed to comply
with the Order of this Court, as its untimely "Memorandum to File[3]" does not provide any
explanation for its failure to respond either to the Motion to Dismiss, or to the Order to Show
Cause. In order for a court to dismiss a plaintiff's claims for failure to prosecute, the court "need
only find that [the] litigant acted deliberately rather than accidentally, and need not find bad
faith." *Hutchins v. A.G. Edwards & Sons, Inc.*, 116 F.3d 1256, 1260 (8th Cir. 1997).

SMA's failure to prosecute this matter in a timely fashion has required this Court to issue
several Orders to Show Cause, with minimal or no response from SMA. Moreover, Plaintiff
SMA's response to the Motion to Strike and for Dismissal is ample evidence of deliberateness in
this case. The Court will grant Defendant O'Leary's Motion to Strike and for Dismissal [ECF
No. 70]. Plaintiff SMA's Complaint will be dismissed, with prejudice.

## III. DEFENDANT O'LEARY'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) AND/OR RULE 12(b)(7) [ECF No. 60], AND GREENSPAN PLAINTIFFS' JOINT MOTION FOR LEAVE TO FILE FIRST AMENDED JOINT COMPLAINT [ECF No. 73]

In his Motion to Dismiss, Defendant O'Leary first notes that the Joint Complaint does not
attach a signed copy of the principal contract that is the subject of this litigation, or a copy of an
exhibit the Joint Complaint references in paragraphs 9-14 [ECF No. 60]. Defendant O'Leary

---

[3]Plaintiff SMA's response, quoted here in its entirety, states merely: "COMES NOW,
Plaintiff SMA Irrevocable Trust, by and through its counsel, Catherine E. Kohn, and joins in the
response of Plaintiffs Aaron B. Greenspan and Anthony F. Sansone, Jr. to the Order to Show
Cause and to Defendant O'Leary's Motion to Dismiss" [ECF No. 68].

asserts that the Joint Complaint should be dismissed as to him for failure to state a claim because it is "bare of specific wrongdoings" by him; he further states that the Complaint mentions him, in conclusory fashion, in only two of its paragraphs. He avers that all of the Complaint's allegations are directed to Defendants RCA and Vibbard, and that the allegations concern RCA's and Vibbard's action or inaction in developing, distributing or registering certain investment documents.

Defendant O'Leary argues that the Plaintiffs' claims of false representation involving the investment securities sold to them by RCA, do not show liability on O'Leary's behalf, because he had no active role in preparing or finalizing the documents, and because any mistakes in the documents were facially apparent, making them open to the Plaintiffs as high net-worth investors. In particular, he claims that Counts 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21 and 23 of the Joint Complaint should be dismissed as to him because those counts seek rescission of a contract between Plaintiffs and Defendant RCA, and contain no allegations against him personally [ECF Nos. 60, 61].

O'Leary asserts that the Joint Complaint does not allege that he "sold" a security, that he received any consideration for the sale of the securities, or that he provided investment advice. O'Leary also claims that all of the federal claims have been brought outside of the applicable statute of limitations. He specifically argues that Counts 1 through 12 of the Joint Complaint should be dismissed as to him under Federal Rule of Civil Procedure 12(b)(6), because they do not allege they are brought within the applicable Statute of Limitations, and because they are, in fact, not timely brought.

Additionally, Defendant O'Leary avers that all of the claims should be dismissed as to him because, even assuming their allegations were true, they fail to state a claim against him as a

matter of law, in that they allege no basis for his personal liability. O'Leary argues that, as an employee of RCA, he was not liable for RCA's actions, and that he is not an individual statutorily identified as having such liability.

Defendant O'Leary also argues that the Joint Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(7), due to the Plaintiffs' failure to join indispensable parties as required by Federal Rule of Civil Procedure 19. He claims that a judgment obtained against him would be "highly prejudicial because he would be subject to multiple liability and inconsistent judgments[.]" O'Leary states that, because "his liability is completely derivative to that of other directors, executives, and employees of [RCA], it is improper and highly prejudicial to allow this suit to move forward without others that were in the same position as him or were senior advisors and executives."

Finally, Defendant O'Leary asserts that the claims in the Joint Complaint should be dismissed with prejudice as to him, because the Greenspan Plaintiffs and Plaintiff SMA each have previously filed an initial pleading and have already been permitted the opportunity to file an amended Joint Complaint.

In their July 10th Response to the Motion to Dismiss, the Greenspan Plaintiffs argue that rescission of a securities transaction is an appropriate remedy against a "statutory seller" and that the Joint Complaint alleged Defendant O'Leary participated in the preparation of the Private Placement Memorandum ("PPM") containing materially false information [ECF No. 67]. Greenspan Plaintiffs additionally claim that Counts 1 through 12 should not be dismissed on Statute of Limitations grounds, because the fraudulent and deceptive activities of the defendants, as well as the unregistered nature of the securities, were reasonably discovered by Plaintiffs within one year of the filing of the original Complaint in this matter. Interestingly, Greenspan

Plaintiffs assert that they were not put on notice of facts that would impel a reasonable man to make an inquiry until *after* they filed their Complaint. The Court notes, however, that the Joint Complaint alleges that, "[a]ccording to the [PPM], interest on the debt was to begin being paid in early 2010," but "[w]hen the due date for the payment of Interest on the units arose, the Defendants notified the Plaintiffs that substantially all of their investment was stolen by one or more officers of Defendant R.Capital Advisors, LLC" [ECF No. 50 at 2 ¶¶ 5, 6]. These allegations clearly indicate that Greenspan Plaintiffs had knowledge of a possible claim against defendants early in 2010.

Greenspan Plaintiffs do acknowledge that no registration statement was filed by RCA; however, they assert that dismissal of the individual federal and Missouri claims still is improper. They argue that the Joint Complaint states such claims against O'Leary, because the Joint Complaint specifically alleges that the securities were required to be registered pursuant to federal securities law; O'Leary represented himself "to be a Senior Partner of RCA involved in the preparation of the registration statement which included financial statements"; the Defendants' failure to file a required form is "one of many reasons the securities at issue were illegally and improperly unregistered"; and "[i]t is simply enough to assert that O'Leary was 'involved in the preparation of the Private Placement Memorandum upon which the Plaintiffs relied in purchasing the securities at issue in this matter.'"

Greenspan Plaintiffs further argue that rescission is an appropriate measure of damages against O'Leary because he was a solicitor and broker of the securities; that imposing liability under Missouri Revised Statute 409.516 for failure to disclose information is proper because O'Leary was selling the securities as a solicitor and broker and was promised commissions for sales; and that Counts 18 through 24 should not be dismissed because O'Leary is a statutory

seller, and rescission is appropriate remedy against a solicitor or broker of unlawfully unregistered securities.

Finally, Greenspan Plaintiffs claim that dismissal under Federal Rule of Procedure 12(b)(7) is not appropriate because complete relief can be accorded by way of a judgment against O'Leary personally under the federal securities laws.

After submitting their Response to O'Leary's Motion to Dismiss, the Greenspan Plaintiffs filed a "Joint Motion for Leave to File First Amended Joint Complaint" on July 16, 2012 [ECF Nos. 73, 73-1]. The Court notes that the Joint Motion expressly states that the proposed First Amended Joint Complaint is submitted to address and resolve the "significant number of legal issues including statute of limitations issues" raised by O'Leary. Thus, the inference can be drawn that the Greenspan Plaintiffs recognize the deficiencies of the Joint Complaint that O'Leary identified in his Motion.

When plaintiffs display lack of diligence, and delay action until a motion to dismiss serves to inform them how to proceed, a court need not permit them to correct omissions by amending a complaint a second time. *Egerdahl v. Hibbing Comty Coll.*, 72 F.3d 615, 620 (8th Cir. 1995). District courts may refuse to grant leave to amend where plaintiffs had earlier opportunity to cure a complaint's defects, but failed to due so. *Id.*

The Court finds that Plaintiffs here have displayed lack of diligence, in correcting the omissions of their pleadings, as well as in their prosecution of this matter. Rule 15 of the Federal Rules of Civil Procedure provides that parties may amend their pleading once as a matter of course, if the pleading is one to which a responsive pleading is required, within 21 days after service of a motion under Rule 12(b). Fed. R. Civ. P. 15(a)(1)(B). The record reveals that Defendant O'Leary filed his Motion to Dismiss on May 31, 2012 [ECF No. 60]. Plaintiffs failed

to respond to the Motion in a timely manner, eventually responding on July 10, 2012, after this Court issued its Order to Show Cause [ECF No. 66, 67]. Plaintiffs likewise did not amend their pleading within 21 days after service of the Motion; therefore, they may amend their pleading only with the defendants' written consent or the Court's leave. Fed. R. Civ. P. 15(a)(2). Nevertheless, the Court is mindful that motions to amend should be freely granted when justice so requires. Consequently, the Greenspan Plaintiffs' Joint Motion for Leave to File First Amended Joint Complaint [ECF No. 73] will be granted. Accordingly, Defendant O'Leary's Motion to Dismiss will be denied as moot.

The proposed First Amended Joint Complaint contains only six counts (as opposed to the twenty-four counts previously asserted in the Joint Complaint): 1) Securities Fraud Under the Securities and Exchange Act § 10(b)-5 and Sec Rule § 10(b)-5 Against Defendant O'Leary; 2) Liability Under Securities Act of 1933 § 12(a)(2) (15 USC § 77l) Against All Defendants; 3) Securities Fraud Under the Securities and Exchange Act § 10(b)-5 and Sec Rule 10(b)5 Against Defendants R. Capital Advisors and Gary Vibbard; 4) Strict Liability Under Securities Act of 1933 § 12(a)(1) (15 USC § 77l) Against Defendants R. Capital Advisors & Gary Vibbard for Selling Unregistered Securities to Plaintiffs; 5) Request for Damages for the Sale of Non-Exempt Securities and for Misrepresentations and Omissions Under Missouri Revised Statute Section 409.5-509(b) Against All Defendants; and 6) Request for Damages Under 409.5-509 (d-f) Against Defendant O'Leary [ECF No. 73-1]. Not only does the First Amended Joint Complaint contain numerous new factual allegations, it also brings new counts, while abandoning several others.

The First Amended Joint Complaint contains claims for liability under §77l of the

Securities Act. Actions brought pursuant to § 77l are subject to the statute of limitations set forth

in 15 U.S.C . § 77m, which provides:

> No action shall be maintained to enforce any liability created under section 77k or
> 77(a)(2) of this title unless brought within one year after the discovery of the
> untrue statement or the omission, or after such discovery should have been made
> by the exercise of reasonable diligence, or, if the action is to enforce a liability
> created under section 77(a)(1) of this title, unless brought within one year after the
> violation upon which it is based. In no event shall any such action be brought to
> enforce a liability created under section 77k or 77(a)(1) of this title more than
> three years after the sale.

Greenspan Plaintiffs assert causes of action under § 10(b) and Rule 10b-5 as well;

therefore Greenspan Plaintiffs' litigation had to be commenced within one year after the

discovery of the facts constituting the violation and within three years after such violation

occurred. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364 (1991).

The Eighth Circuit has held that plaintiffs bear the burden of pleading compliance with *Lampf*,

because the statute of limitations set forth in that decision is a substantive, rather than a

procedural requirement. *See Davidson v. Wilson*, 973 F.2d 1391, 1402 n. 8(8th Cir. 1992).

It is well established that a court has a special obligation to consider whether it has

subject matter jurisdiction in every case, and that the obligation includes the concomitant

responsibility to consider the matter *sua sponte* where the court believes jurisdiction may be

lacking. *Clark v. Baka*, 593 F.3d 712, 714 (8th Cir. 2010) (per curiam). Because the time limit

imposed by this statute of limitations is jurisdictional, this Court must dismiss Greenspan

Plaintiffs' action if it determines that there is a lack of subject matter jurisdiction.

To satisfy their burden of pleading compliance with the one-year prong of the Securities

Act's statute of limitations, plaintiffs must set forth the time and circumstances of the discovery

of the fraud, why the fraud was not discovered earlier, and their diligent efforts to make the

discovery. *Davidson*, 973 F.2d at 1402 n. 8. Enforcement of civil liability under § 409.5-509 of Missouri Revised Statutes is subject to the Securities Litigation Uniform Standards Act of 1998; thus, litigation brought for the violations of § 409.3-301, or under subsection (d) of § 409.5-509 alleged by Greenspan Plaintiffs in the First Amended Joint Complaint also must be instituted within one year after the violation occurred. Mo. Rev. Stat. § 409.5-509(a), (j) (2012).

Consequently, the Securities Act and the applicable Missouri statutes require Greenspan Plaintiffs to plead and prove facts that establish their action was filed within the specified one-year limitations period. Greenspan Plaintiffs filed their initial Complaint on November 8, 2011. Their First Amended Joint Complaint must plead facts showing that they did not know of facts constituting the alleged violation sufficient to put them on notice, until after November 8, 2010.

The violations alleged by Greenspan Plaintiffs concern statements contained in the PPM they received in association with their purchases of one or more units of Series 1 debt with detachable warrants of RCA [ECF No. 73-1 at 3 ¶ 5]. According to Greenspan Plaintiffs, the PPM contains several false statements, including that the issuer had secured $5 billion of signed engagements from 30 existing clients located on four continents, representing $50 million in future revenue to RCA; that RCA was set to launch a Global Fund investment by the end of 2011, with $250 million in assets under management; and that RCA's management team had 300 combined years of industry experience and participated in $22 billion of value creating events [ECF 73-1 at 10 ¶¶ 44-50].

Greenspan Plaintiffs attach to their First Amended Joint Complaint, incorporating by reference, a copy of the PPM associated with their RCA purchase, and a letter from O'Leary addressed to Plaintiff Greenspan, dated April 20, 2010, which indicated that a copy of the PPM was enclosed with the mailing [ECF No. 73-1 at 3 ¶ 5, 73-1 at 5 ¶17; Exs. 1, 8]. Greenspan

Plaintiffs allege "[i]t was later discovered that the PPM provided by O'Leary to Plaintiffs as well as the financial statements were both false and misleading" [ECF No. 73-1 at 6 ¶ 24].  They further allege that interest on the unregistered securities "was to begin being paid in late 2010[4][,]" but "[w]hen the due date for the payment of Interest on the units arose, the Defendants notified the Plaintiffs that substantially all of their investment was stolen by one or more officers of Defendant RCA" [ECF No. 73-1 at 4 ¶¶ 11, 12].

Greenspan Plaintiffs allege that they relied on their understanding that O'Leary was an RCA partner with personal knowledge of the workings of the Company and that they "did not become aware that O'Leary supposedly was nothing more than an independent contractor with no knowledge of the inner workings or RCA until January 11, 2012" [ECF No. 73-1 at 7 ¶ 29].

To establish their compliance with the Securities Act's requirement to plead and prove facts showing that their action was filed within the specified one-year limitations period, Greenspan Plaintiffs state in the first count of the First Amended Joint Complaint that they "did not and could not have reasonably known that O'Leary had misrepresented his relationship with Defendant RCA . . . prior to the filing of Defendant O'Leary's declaration filed with this Court on January 11, 2012 [ECF No. 73-1 at 8 ¶ 34, Ex. 10].  Greenspan Plaintiffs declare: "Thus, the misrepresentations of O'Leary regarding his relationship and knowledge of the inner workings of RCA were discovered less than one year from the date of the filing of this Complaint" [ECF No. 73-1 at 8 ¶ 34]. Greenspan Plaintiffs claim that had they realized O'Leary was not involved in the

_____

[4]The Court notes this allegation differs from the corresponding one contained in the Joint Complaint, asserting the PPM represented that interest was to begin being paid in "**early 2010**." Furthermore, the PPM incorporated with the plaintiffs' pleadings contradicts the First Amended Complaint's time allegation, as the PPM states:  "Ten percent (10%) annual simple interest on Principal paid quarterly, commencing 31 March 2010, until Principal is repaid." [ECF No. 73-1 at 41, 55].

inner circle of RCA, but instead "was simply a salesperson pushing the unregistered securities for excessive commissions," they would not have relied on O'Leary's representations regarding the safety of RCA securities and would not have purchased the unregistered securities [ECF No. 73-1 at 9 ¶ 38].

In the second count of their pleading , Greenspan Plaintiffs merely allege, with no further elaboration: "The material misstatements by O'Leary and all other Defendants set forth herein were not discovered until less than one year prior to the filing of the original Complaint by Plaintiff's (sic) Greenspan and Sansone on November 8, 2011, therefore Count II is brought within the Statute of Limitations set forth in 15 USC § 77(m)" [ECF No. 73-1 at 8 ¶ 42].

To establish that their third count was timely prosecuted, Greenspan Plaintiffs state: "Plaintiffs Sansone and Greenspan did not and could not have reasonably known that the statements contained in the Private Placement Memorandum above were false until less than one year before the filing of their Complaint on November 8, 2011, because they were not aware that RCA and its representatives had been intent on stealing the investment of Plaintiffs until the non-performance of the underlying securities in late 2010" [ECF No. 73-1 at 15-16 ¶ 82].  The Greenspan Plaintiffs' remaining counts do not allege any additional facts concerning their discovery of the facts constituting the violations.

The only specific time reference alleged in the First Amended Joint Complaint identifies January 11, 2012 as the date they were put on notice regarding O'Leary's commission of securities fraud.  Given that Greenspan Plaintiffs actually filed their original complaint, alleging that O'Leary distributed false and misleading statements to them that induced them to invest in RCA, on November 11, 2011, their selection of a post-filing date strains the limits of credibility. While the Greenspan Plaintiffs may not have acquired full knowledge of the existence of a claim

against O'Leary until January 11, 2012, the one-year limitation period does not require full knowledge; rather, the period begins to run when a party is placed on "inquiry notice" by circumstances that would alert a reasonable person to the possibility that they had been provided false or misleading information. *See Davidson*, 973 F.2d at 1402. The First Amended Joint Complaint's only other allegation regarding discovery of securities violation vaguely asserts that plaintiffs "were not aware that RCA and its representatives had been intent on stealing the investment of Plaintiffs until the non-performance of the underlying securities in late 2010" [ECF No. 73-1 at 15-16 ¶ 82]. The First Amended Joint Complaint fails to set forth the time and circumstances of their discovery of the alleged fraud, to explain why the fraud was not discovered earlier, and to recount diligent efforts to discover the fraud. *See Davidson*, 973 F.2d at 1402 n.8 (because timeliness requirement is substantive, plaintiffs must establish compliance by affirmatively pleading facts with specificity, including pleading actual date of investment purchases, time and circumstances of their discovery of alleged fraudulent statements, and reasons why discovery was not made earlier). Greenspan Plaintiffs have not met their burden of pleading compliance with the statute of limitations as set forth in *Lampf*. *See Davidson*, 973 F.2d at 1402 n.8. Accordingly, their First Amended Joint Complaint must be dismissed as untimely filed.

Furthermore, the allegations of the First Amended Joint Complaint support a finding that the plaintiffs had knowledge of facts sufficient to put them on inquiry notice much earlier than they have declared. 15 U.S.C. § 77m requires reasonable diligence; "an action must be commenced within one year after the investor either knew or should have known of the false or misleading communication." *Davidson*, 973 F.2d at 1402. Circumstances constituting inquiry notice have been referred to as "storm warnings," and are those which would alert a reasonable

person to the possibility that material omissions or misleading information had been provided. *Id.* Whether a plaintiff is on inquiry notice is an objective question. *Id.*

Plaintiff Sansone wired $200,000 to RCA's bank for the purchase of unregistered securities on August 21, 2009, and he wired $100,000 for a subsequent purchase on May 17, 2010 [ECF No. 73-1at 3-4 ¶¶7, 10]. Plaintiff Greenspan wired $100,000 to RCA's bank for purchases of unregistered securities on two occasions, December 8, 2009, and April 26, 2010 [ECF No. 73-1 at 3-4 ¶¶ 8-9]. The First Amended Joint Complaint indicates that the plaintiffs received the PPM from RCA in April of 2010 [ECF No. 73-1 at 6 ¶¶ 23-24; 73-1 at 153]. Thus, the PPM, with its alleged false and misleading statements and substantial discrepancies, was within the plaintiffs' possession no later than April of 2010.

The First Amended Joint Complaint describes several of the PPM's alleged fraudulent statements with significant detail, and, among other things, points out substantial discrepancies between amounts projected and historical rates of return, and several mathematical improbabilities. The First Amended Joint Complaint contains the following allegations concerning the PPM's representations:

> 52. Section 2 of the PPM, the "Summary of Financials", is intentionally misleading since the numbers do not mathematically "add up". On table 7 of the financial statements, the Issuer represents that the Company had over $1.78 million in receivables as of the end of fiscal year 2007. However, on Table 4, the Issuer reported that the Issuer had only $1.4 million in income. This shortfall of $378,000 is not reported as a bad debt and therefore the balance sheets and income statements are false on their face.
>
> 65. Section 4, Page 4 of the PPM, the "Executive Summary of Financial Information" depicts that using the "Low Case" the $1 warrant will grow in value 100% in 6 years and 2500% in 25 years.
>
> 66. In order to achieve the later target growth of 2500% in 25 years, the Issuer must cause the warrant to appreciate at a compound interest rate of 36.8% each year for 20 years. Such a

representation flies in the face of historical fact and therefore this
rate of return is false and misleading *ab initio*.  In the equity market
no equity instrument can claim this rate of return.

[ECF No. 73-1 at 10, 13].

The Court finds unpersuasive Greenspan Plaintiffs' claim that they could not have been
reasonably aware that the PPM's representations, particularly those the First Amended Joint
Complaint now characterizes as "*ab initio*," were false, until they found out "that RCA and its
representatives had been intent on stealing the investment of Plaintiffs until the non-performance
of the securities in late 2010," or until they learned on January 11, 2012, that O'Leary had
misrepresented his standing or position with RCA.  Greenspan Plaintiffs fail to explain how the
substantial facial discrepancies and inconsistencies they now identify in the PPM could  not
previously have been equally obvious to them.  The Court finds that the Greenspan Plaintiffs
were in possession of such facts sufficient to put them on inquiry notice no later than April of
2010, and that the misrepresentations they allege were made by O'Leary or the other defendants
would not serve to conceal the obvious inconsistencies Greenspan now detail in support of their
cause of action.

Although Greenspan Plaintiffs may not have possessed full knowledge of the existence of
their claim until after this litigation commenced, the mere filing of their initial Complaint
indicates that they were placed on inquiry notice prior to the January 2012 date they now claim
triggered the running of the limitations period.  *See Davidson*, 973 F.2d at 1391.  Additionally,
the First Amended Joint Complaint states that Greenspan Plaintiffs were notified "that
substantially all of their investment was stolen" when the payment of interest on their investment

was due, stating that the interest on the securities "was to begin being paid in late 2010"[5] [ECF No. 73-1 ¶¶ 11, 12]. While improperly vague as to the actual date the plaintiffs were notified, this allegation indicates, at the very least, that Greenspan Plaintiffs had knowledge of facts that would alert them much earlier than they now assert, and clearly more than one year before they filed their complaint on November 8, 2011. Consequently, this Court finds that Greenspan Plaintiffs have not affirmatively pleaded facts indicating that the action has been timely brought. They have failed to plead the time and circumstances of their discovery of the alleged fraudulent statement and the reason why discovery was not made earlier.

Not only does the First Amended Joint Complaint fail to plead facts showing that the claims are timely brought under 15 U.S.C. § 77m; it also fails to allege facts, accepted as true and liberally construed, sufficient to establish liability on O'Leary's behalf, or to show reliance upon any misrepresentations made by O'Leary under the applicable federal and state securities laws. *See Iqbal*, 556 U.S. at 678 (standard for dismissal). *See also Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2299-2302 (2011) (elements of private securities fraud action based on violations of §10 (b) and Rule 10b-5 include material misrepresentation or omission, scienter, connection between false statement and purchase, reliance, economic loss, and loss causation; private right of action does not include suits against aider and abettors, only makers of the statements, i.e., those with ultimate authority over the statements); *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S.Ct. 2179, 2184-86 (2011) (when considering whether plaintiff has relied on a misrepresentation in a private 10b-5 action, focus is on facts surrounding

_____

[5]Although this allegation is contrary to the time period alleged in the Joint Complaint, and is actually contradicted by the PPM incorporated by reference to the First Amended Joint Complaint [ECF No. 73-1 at 41], for the purposes of this Motion, the Court accepts this allegation as true.

investor's decision to engage in transaction); *Lampf,* 501 U.S. at 358-64 (litigation pursuant to §10(b) and Rule 10b-5 must be commenced within 1 year after the discovery of facts constituting violation and within 3 years after such violation); *Pinter v. Dahl*, 486 U.S. 622, 627-55 (1988) (discussing liability under § 12(l) of the Securities Act of 1933, as amended, 15 U.S.C. §77(l)); and Mo. Rev. Stat. §§ 409.5-501 *et seq.* (fraudulent activities and violations involving the offer, sale or purchase of securities).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant O'Leary's Motion to Strike and for Dismissal [ECF No. 70] is **GRANTED**.  Plaintiff SMA Irrevocable Trust's claims against all defendants contained in the Joint Complaint [ECF No. 50] are **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED** that Plaintiffs Aaron B. Greenspan and Anthony F. Sansone, Jr.'s Joint Motion for Leave to File First Amended Joint Complaint [ECF No. 73] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Timothy O'Leary's Motion to Dismiss Pursuant to Rule 12(b)(6) and/or 12(b)(7) for Failure to Join Indispensable Parties and Failure to State a Claim [ECF No. 60] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that  Plaintiffs Aaron B. Greenspan and Anthony F. Sansone, Jr.'s First Amended Joint Complaint [ECF No. 73-1] is **DISMISSED with prejudice** as time-barred by the applicable statute of limitations.

Dated this  __19th__  day of October, 2012.

_E. Richard Webber_
_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE